UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF FLORIDA

CASE NO.:

MEIR ESSES

    Plaintiff,

vs.

MEDX ONE, INC. and DENNIS CHIONG

    Defendant.

_____/

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, Meir Esses ("Esses" or "Plaintiff"), and sues Defendants, Medx One, Inc. ("Medx") and Dennis Chiong ("Chiong") and states as follows:

### I. THE PARTIES

1. Meir Esses ("Esses") is a resident of Kings County, New York.

2. Medx is a corporation incorporated in Arizona with its principal place of business in Maricopa County, Arizona.

3. Chiong is a resident of Arizona.

### II. JURISDICTION AND VENUE

4. Federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332. Esses is a resident of Kings County, New York.

5. Medx is domesticated and incorporated in Arizona with its principal place of business in Maricopa County, Arizona.

6. Chiong is a resident of Arizona.

7. Complete diversity exists between the Plaintiffs and the Defendants.

8. The Plaintiff seeks more than 1.6 million dollars in damages from Medx and Chiong.

9. This court has diversity jurisdiction pursuant to 28 U.S.C.§1332.

10. On July 22nd, 2020, Esses entered into a contract with Medx wherein Esses agreed to sell and Medx agreed to purchase 350,000 gowns for the purchase price of $4.75 per gown for a total purchase price of $1,662.500.00 (the "Contract"). A true and authentic copy of the Contract is attached as *Exhibit "A."* [1]

11. Venue is proper in the Southern District because the Contract contains a forum selection clause at paragraph 9 which states as follows:

> 9. <u>Choice of Law and Forum</u>. This Agreement, including all exhibits, schedules, attachments, and appendices attached to this Agreement and thereto, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of Florida, United States of America, without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Florida. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, in any forum other than the State of Florida.

Additionally, negotiations concerning the Contract occurred in Miami-Dade County through Ironstone on behalf of Esses. The payment under the Contract was to be made in Miami-Dade County. The harm caused by the Chiong's fraud occurred in Miami-Dade County and all

---

[1] The Contract was executed by Messes c/o Ironstone Capital Holdings, LLC ("Ironstone") and Medx One, Inc. Ironstone handled the negotiations of the Contract on behalf of Esses, payment terms and handled the logistics and shipping of the Gowns. Ironstone is a Florida Limited Liability Company which was incorporated in Florida with its principal place of business in Miami-Dade County, Florida. Ironstone's sole member is a resident of Miami-Dade County, Florida.

fraudulent representations were made by Chiong to individuals located in and acting on Esses' behalf in Miami-Dade County.

12. Venue is proper in the Southern District of Florida.

### III. GENERAL ALLEGATIONS

13. Esses fully performed under the Contract.

14. Esses delivered 350,000 Gowns to Medx on July 27, 2020 pursuant to the terms of the Contract.

15. Medx did not object to the Gowns as nonperforming.

16. Medx failed and refused to pay for the Gowns.

17. Esses has had to pay the shipping and storage costs of the Gowns, which costs presently exceed $40,000.00 and continue to accrue.

18. Chiong fraudulently stated and then assured Esses through statements to Ironstone over the two-week period prior to executing the Contract that Medx could and would pay for the Gowns to induce Esses to enter into the Contract and ship the Gowns.

19. Paragraph seven (7) of the Contract required Medx to pay the Contract sum prior to the release of the Gowns from the delivery trucks to Medx. Chiong represented that Medx had the funds to pay for the Gowns when they were shipped and arrived in Arizona.

20. Chiong knew that Medx did not have the funds to pay for the Gowns when he made the foregoing representations and that Medx had no intention to pay for the Gowns after they were shipped to Arizona and before they were released from the delivery trucks.

21. All conditions precedent to bring this action have been met.

## COUNT I – BREACH OF CONTRACT

22. Plaintiff readopts and incorporates paragraphs 1 through 17 as if fully set forth herein.

23. Esses and Medx entered into a valid contract which is attached as *Exhibit "A."*

24. Esses fully performed under the Contract by delivering conforming Gowns to Medx in Arizona.

25. Medx breached the Contract by failing to pay for the Gowns upon their arrival as required by the Contract.

26. Esses has been damaged by Medx's breach in the amount of $1,662,500.00, the shipping costs incurred to ship the Gowns to Arizona, the storage costs incurred and the costs to return the Gowns to Esses.

27. Esses is entitled to its attorneys' fees and costs pursuant to paragraph seven (7) of the Contact.

WHEREFORE, the Plaintiff demands judgment against Medx for its damages, interest, attorneys' fees and costs and all other relief this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT - IN THE ALTERNATIVE

28. Plaintiff readopts and incorporates paragraphs 1 through 12, and 15 through 17 as if fully set forth herein.

29. Esses conferred a benefit upon Medx by shipping the Gowns to Medx in Arizona.

30. Medx had knowledge of the benefit conferred and accepted same.

31. The circumstances are such that it would be inequitable for Medx to retain the benefit conferred by Esses without paying for it.

32. Equity demands that Medx should pay for the Gowns, the value of which is $1,662,500.000, and the shipping and storage costs attendant to the shipment of the Gowns.

WHEREFORE, The Plaintiff demands judgment against Medx for $1,662,500.00, the shipping and storage costs of the Gowns, court costs, interest, and such other relief this Court deems just and proper.

## COUNT III – FRAUD AGAINST DENNIS CHOING

33. Plaintiff readopts and incorporates paragraphs 1 through 12 and 18 through 20 as if fully set forth herein.

34. Choing fraudulently induced Esses into entering into the Contract by stating that if Esses shipped the Gowns to Arizona, Esses would be paid the sum of $1,622,500.00.

35. Choing fraudulently represented that his company, Medx, had the funds to pay Esses upon arrival of the Gowns.

36. When Choing made the representations, he knew that he and Medx had no intention of paying for the Gowns upon delivery.

37. When Choing fraudulently stated that Medx would pay for the Gowns upon arrival, he knew that Medx did not have the funds to do so.

38. Choing fraudulently induced Esses into shipping the Gowns to Arizona at great cost to Esses. Esses reasonably relied upon Chiong's representations.

39. Esses has been damaged by Choing's fraudulent representations in the sum of $1,622,500.00, the shipping costs incurred to ship the Gowns to Arizona, the storage costs incurred and the costs to return the Gowns to Esses.

WHEREFORE, The Plaintiff demands judgment against Choing for its damages, punitive damages, court costs, interest, and such other relief this court deems just and proper.

**TRIAL BY JURY IS HEREBY DEMANDED**

DATED: August 19, 2020

>THE TARICH LAW FIRM P.A.
>1946 Tyler Street
>Hollywood, Florida 33020
>Telephone: 305.503.5095
>Facsimile: 866.858.1226
>Primary Email: Wcalnan@TarichLaw.com
>Additional Email: Assistant2@TarichLaw.com
>
>By: */s/ William E. Calnan*
>William E. Calnan, Esq.
>Florida Bar No. 938785

# EXHIBIT "A"

# Sale of Goods Agreement

This Sale of Goods Agreement (this "Agreement," to be referenced by #101 ("Contract Reference Number") dated as of July 22, 2020 (the "Effective Date"), outlines the agreement between Meir Esses, c/o Ironstone Capital Holdings LLC, a Florida Limited Liability Company (**"Seller"**) and Medx One, Inc., an Arizona Corporation (the **"Buyer"**), each a "Party" and collectively "Parties." ("**Seller**", and together with Buyer, the "**Parties**", and each, a "**Party**").

WHEREAS, Buyer is seeking to purchase blue isolation gowns with a white cuff (each a "Gown" or "Gowns").

WHEREAS, Seller is in the business of selling such Gowns (the "Goods"); and

WHEREAS, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer the Goods.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Sale of Goods</u>. Seller shall sell to Buyer and Buyer shall purchase from Seller the Gowns (the "**Goods**") in the quantities and at the Prices (as defined in Section 6) and upon the terms and conditions set forth in this Agreement.

2. <u>Delivery</u>.

    (a) The goods will be purchased CPT (Carriage Paid To), and delivered to the Buyer's warehouse, 70 S. Val Vista Dr. STE A1-A3, Gilbert, AZ 85296-1375 ("Buyer's Location") on or around July 23, 2020, time is of the essence. Buyer shall not be liable for anything that happens to the Goods until arrival at Buyer's Location.

    (b) If for any reason Buyer fails to accept delivery of any of the Goods on the date fixed pursuant to Seller's notice that the Goods have been delivered to the Seller's Location, (i) risk of loss to the Goods shall pass to Buyer; (ii) the Goods shall be deemed to have been delivered; and (iii) Seller, at its option, may store the Goods until Buyer accepts the goods or chooses to reject them based on non-conformity, whereupon Buyer shall be liable for all related costs and expenses (including, without limitation, storage and insurance).

3. <u>Quantity</u>. Seller shall deliver to Buyer Three Hundred and Fifty Thousand (350,000) Gowns, equal to three thousand and five hundred (3,500) boxes of One Hundred (100) Gowns. If Seller delivers to Buyer a quantity of Goods of up to 10% more or less than the quantity set forth above, Buyer shall not be entitled to object to or reject the Goods or any portion of them by reason of the surplus or shortfall and shall pay for such Goods the price set forth in this Agreement adjusted pro-rata.

4. <u>Title and Risk of Loss</u>. Title and risk of loss pass to Buyer upon delivery of the Goods at the Buyer's Location.

5. <u>Inspection and Rejection of Nonconforming Goods</u>.

(a) Buyer shall inspect the Goods prior to accepting the Goods from the Seller's trucks ("**Inspection Period**"). Buyer will be obligated to accept, and be deemed to have accepted, the Goods unless it notifies Seller in writing of any Nonconforming Goods during the Inspection Period and furnishes such written evidence or other documentation as reasonably required by Seller. Upon arrival of the Goods at Buyer's Location, there is an absolute no-return, no-refund policy. "**Nonconforming Goods**" means only the following: (i) product provided is different than identified in this Agreement; (ii) the product's label or packaging incorrectly identifies its contents; the authentic SGS report provided by the Seller from China does not state that the Goods are in fact AAMI Level 3 Isolation Gowns.

(b) If Buyer timely notifies Seller of any Nonconforming Goods, Seller shall, in its sole discretion, (i) replace such Nonconforming Goods with conforming Goods, or (ii) credit the Price for such Nonconforming Goods. Buyer shall ship, at its expense and risk of loss, the Nonconforming Goods to Seller's facility located in Avenel, NJ. If Seller exercises its option to replace Nonconforming Goods, Seller shall, after receiving Buyer's shipment of Nonconforming Goods, ship to Buyer, at Seller's expense and risk of loss, the replaced Goods to the Delivery Point.

(c) Buyer acknowledges and agrees that the remedies set forth in Section 6(b) are Buyer's exclusive remedies for the delivery of Nonconforming Goods. Except as provided under Section 6(b), all sales of Goods to Buyer are made on a one-way basis and Buyer has no right to return Goods purchased under this Agreement to Seller.

6. Price. Buyer shall purchase the Goods from Seller at the price (the "**Price**") of Four Dollars and Seventy-Five Cents ($4.75) per Gown, which equals $4,750.00 per box of one hundred (100) Gowns, for a total purchase price of One Million and Six Hundred and Sixty-Two Thousand and Five Hundred Dollars ($1,662,500).

7. Payment Terms. Buyer shall pay the total order amount of One Million and Six Hundred and Sixty-Two Thousand and Five Hundred Dollars ($1,662,500) prior to Seller's release of the Goods from Seller's trucks to the Buyer, or in the event that Buyer does not make itself available to receive the Goods, within twenty-four hours of the Goods being made available to Buyer at Buyer's Location for inspection, time of the essence. Buyer shall make all payments hereunder by wire transfer and in US dollars. Buyer shall pay interest on all late payments at the lesser of the rate of 3% per month or the highest rate permissible under applicable law, calculated daily and compounded monthly. Buyer shall reimburse Seller for all costs incurred in collecting any late payments, including, without limitation, attorneys' fees.

8. Limitation of Liability.

(a) IN NO EVENT SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR ENHANCED DAMAGES, LOST PROFITS OR REVENUES OR DIMINUTION IN VALUE, ARISING OUT OF, OR RELATING TO, OR IN CONNECTION WITH ANY BREACH OF THIS AGREEMENT, REGARDLESS OF (A) WHETHER SUCH DAMAGES WERE FORESEEABLE, (B) WHETHER

OR NOT SELLER WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, (C) THE LEGAL OR EQUITABLE THEORY (CONTRACT, TORT OR OTHERWISE) UPON WHICH THE CLAIM IS BASED, AND (D) THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

9. **Choice of Law and Forum.** This Agreement, including all exhibits, schedules, attachments, and appendices attached to this Agreement and thereto, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of Florida, United States of America, without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Florida. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, in any forum other than the State of Florida.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**SELLER**
Meir Esses,
c/o Ironstone Capital Holdings

By _Meir esses (Jul 23, 2020 08:16 EDT)_
Name: Meir Esses

**BUYER**
Medx One, Inc.,
an Arizona Corporation

By _[signature]_
Name: Dennis Chiong
Title: **President/CEO**

3

# Sale of Goods Agreement - short form - Meir Esses

Final Audit Report                                                                 2020-07-23

| | |
|---|---|
| Created: | 2020-07-23 |
| By: | Dennis Chong (dchong073@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_uYeAhxgMEuKr5d7ie8jaqNzN8MzBsVU |

## "Sale of Goods Agreement - short form - Meir Esses" History

- Document created by Dennis Chong (dchong073@gmail.com)
  2020-07-23 - 10:42:28 AM GMT- IP address: 98.175.185.175

- Document emailed to Meir esses (meir@ironstonesupplies.com) for signature
  2020-07-23 - 10:43:23 AM GMT

- Email viewed by Meir esses (meir@ironstonesupplies.com)
  2020-07-23 - 11:57:45 AM GMT- IP address: 172.58.239.31

- Document e-signed by Meir esses (meir@ironstonesupplies.com)
  Signature Date: 2020-07-23 - 12:16:00 PM GMT - Time Source: server- IP address: 172.58.239.31

- Signed document emailed to Meir esses (meir@ironstonesupplies.com) and Dennis Chong (dchong073@gmail.com)
  2020-07-23 - 12:16:00 PM GMT

Adobe Sign